UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case no. 26-09345 |
| | ) | |
| ENKLU, Inc., | ) | Chapter 7 |
| | ) | |
| Debtor, | ) | Honorable Jacqueline P. Cox |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter comes before the court on a Motion to Dismiss filed by Wanger Income and Growth Fund, LP ("WIGF"). WIGF argues that Enklu, Inc.'s Chapter 7 petition should be dismissed because it lacked the corporate authority to file. The court finds that Enklu did have authority to file as the Amended and Restated Certificate of Incorporation of Enklu, Inc. (the "Amended Charter") specifically listed actions it could not take without the permission of WIGF as a Series A-1 Preferred Shareholder or Malcolm Bourne in his capacity as the Series A-1 Preferred Director. Filing for bankruptcy was not one of them. As explained below, the court will not read into the Amended Charter words that are not there. The Motion to Dismiss is denied, and Enklu may proceed with its Chapter 7 petition.

**BACKGROUND**

**I. The Amended Charter**

Enklu, Inc. is a software company incorporated in Delaware since July 8, 2016. (Amended Charter, Dkt. 9 at p. 1). On December 1, 2023, Enklu adopted its Amended Charter, "which established and governed the rights, preferences, powers, limitations, and protections associated with its capital structure, including a Series A-1 Preferred Stock." (Mot. to Dismiss, Dkt. 9 at ¶ 2). According to the Amended Charter, Enklu is authorized to issue 83,640,482 in stock.[1] (Amended Charter, Dkt. 9, Ex. 1 at p. 1). WIGF is a lead investor and controlling shareholder, having invested

[1]Enklu "has two classes of stock, referred to as Common Stock and Preferred Stock. There are 53,900,000 shares of authorized Common Stock . . . and 29,740,482 shares of authorized Preferred Stock . . . 14,625,313 of which are hereby designated as 'Series A-1 Preferred Stock.'" (Amended Charter, Dkt. 9, Ex. 1 at 1).

$1,000,000 into the Series A-1 Preferred Stock. (Summary of Deal Terms, Dkt. 9, Ex. 2); *see also* Chapter 7 Voluntary Petition, Dkt. 1, internal p. 31 at ¶ 4.4. As of May 21, 2026, Enklu owed WIGF $845,218.39, funds WIGF loaned to Enklu so Enklu could continue its operations. (Mot. to Dismiss, Dkt. 9 at ¶5).

On December 1, 2023, Enklu and its investors signed an Amended Voting Agreement, which entitled the Series A-1 Preferred Stockholders "to elect one director of the Corporation (the 'Series A-1 Preferred Director')." (Amended Voting Agreement, Dkt. 9, Ex. 6, Recitals at p. 1). Enklu's Board of Directors initially included Ray Kallmeyer, Austin Walne, Eric Wanger, Gale Savino, and Mike Savino. On May 4, 2026, Malcolm Bourne was elected as the A-1 Preferred Director, replacing Eric Wanger. (Action by Written Consent of the Series A-1 Preferred Stockholders, Dkt. 9, Ex. 7).

## II. Preferred Stock Protective Provisions

Article 4, Section 3.3 of the Amended Charter is titled Preferred Stock Protective Provisions. This section details the actions requiring permission from the Requisite Holders. The Requisite Holders are defined as "the holders of at least a majority of the outstanding shares of Preferred Stock, voting together as a single class on an as-converted to Common Stock basis and Wanger Income and Growth Fund, LP." (Amended Charter, Dkt. 9, Ex. 1, Art. Fourth, § 2.5.1 at p. 6). WIGF summarizes the role of the Requisite Holders saying they "are stockholder-level decisionmakers whose approval is required for specified actions identified in the Preferred Stock Protective Provisions." (Mot. to Dismiss, Dkt. 9 at ¶ 13). The actions requiring the permission of the Requisite Holders are as follows:

> At any time when at least 7,435,120 shares of Preferred Stock . . . are outstanding, the Corporation shall not, either directly or indirectly by amendment, merger, consolidation, domestication, transfer, continuance, recapitalization, reclassification, waiver, statutory conversion, or otherwise, effect any of the following acts or transactions without . . . the written consent or affirmative vote of the Requisite

> Holders: liquidate, dissolve or wind-up the business and affairs of the Corporation or effect any Deemed Liquidation Event[2] or any other merger, consolidation, statutory conversion, transfer, domestication or continuance.

(Amended Charter, Dkt. 9, Ex. 1, Art. Fourth, §§ 3.3–3.3.1 at p. 9). Should Enklu desire to liquidate, dissolve or wind-up the business and affairs of the Corporation or effect any Deemed Liquidation Event, it would need the permission of the Requisite Holders as defined by the Amended Charter. 8 Del. C. § 102(b)(1); *see also CA, Inc. v. AFSCME Emps. Pension Plan*, 953 A.2d 227, 234 (Del. 2008).

## III. Requisite Director Provisions

Article 4, Section 3.2(e) and Article 6 of the Amended Charter "separately provide[] that certain corporate actions require approval of the Requisite Directors, which includes the Series A-1 Preferred Director if serving on the Board." (Mot. to Dismiss, Dkt. 9 at ¶ 18). Requisite Directors means "approval by the Board of Directors, including the approval of the Series A-1 Preferred Director [Malcolm Bourne] if the Series A-1 Director is a member of the Board at the time of such consent." (Amended Charter, Dkt. 9, Ex. 1, Art. Fourth, § 3.2(e) at p. 9). According to WIGF, "Requisite Directors are part of the Board-level governance structure and include the Series A-1 Preferred Director when serving on the Board." (Mot. to Dismiss, Dkt. 9 at ¶ 13). Article 6 of the Amended Charter states, "so long as the holders of Series A-1 Preferred Stock are entitled to elect a Series A-1 Preferred Director, the affirmative vote of the Requisite Directors shall be required for the authorization by the Board of Directors of any of the matters set forth in the Investors' Rights Agreement." (Amended Charter, Dkt. 9, Ex. 1, Art. Sixth at p. 21). The Investors' Rights

[2] The Amended Charter defines a Deemed Liquidation Event as "a merger, consolidation, statutory conversion, transfer, domestication, or continuance . . . the sale, lease, transfer, exclusive license or other disposition, in a single transaction or series of related transactions, by the Corporation or any subsidiary of the Corporation of all or substantially all the assets of the Corporation and its subsidiaries taken as a whole, or . . . the sale, lease, transfer, exclusive license or other disposition (whether by merger, consolidation, statutory conversion, domestication, continuance or otherwise, and whether in a single transaction or a series of related transactions) of one or more subsidiaries of the Corporation if substantially all of the assets of the Corporation and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, except where such sale, lease, transfer, exclusive license or other disposition is to a wholly owned subsidiary of the Corporation."

Agreement includes a provision that states, "The current protective provisions that currently require the consent of the Preferred Director shall instead be amended to require the consent of the Series A-1 Director." (Term Sheet, Investors' Rights Agreement, Dkt. 9, Ex. 4 at p. 4). Should Enklu desire to liquidate, dissolve or wind-up the business of the Corporation or effect a Deemed Liquidation Event, it would need approval from the Series A-1 Preferred Shareholders.

## IV. Series A-1 Preferred Stock

WIGF invested $1,000,000 in the Series A-1 Preferred Stock, making it the lead investor. (Mot. to Dismiss, Dkt. 9 at ¶ 3); *see also* Summary of Deal Terms, Dkt. 9, Ex. 2.

The Amended Voting Agreement entitled the Series A-1 Preferred Stockholders "to elect one director of the Corporation (the 'Series A-1 Preferred Director')." (Amended Voting Agreement, Dkt. 9, Ex. 6, Recitals at p. 1). WIGF states that the "Series A-1 Preferred Director was not created to serve as an observer, but rather a role that was incorporated into the Charter's governance framework for specified corporate actions." (Mot. to Dismiss, Dkt. 9 at ¶ 12).

On May 4, 2026, Malcolm Bourne became the A-1 Preferred Director. (Action by Written Consent of the Series A-1 Preferred Stockholders, Dkt. 9, Ex. 7). As stated, the Investors Rights Agreement requires Enklu to obtain the permission of the Series A-1 Preferred Director to perform the actions listed in the Preferred Stock Protective Provisions. (Term Sheet, Investors' Rights Agreement, Dkt. 9, Ex. 4 at p. 4). Once again, should Enklu desire to liquidate, dissolve, or wind-up the business of the Corporation or effect any Deemed Liquidation Event, it needs the approval of Malcolm Bourne as the Series A-1 Preferred Director.

## V. The Chapter 7 Petition

On May 29, 2026, the board of directors held a meeting where a resolution was presented for Enklu to file a Chapter 7 petition. (Chapter 7 Petition, Minutes of a Meeting of the Board of

Directors ("Minutes,") Dkt. 1 at pp. 4–6). The directors who were present were Ray Kallmeyer, Malcolm Bourne (in his capacity as the Series A-1 Preferred Director), Austin Walne, Heidi Braun, and Gale Wilkinson. *Id.* at 4. On the resolution to file a petition, the Minutes reflect that "Gale Wilkinson motioned to approve, with Austin Walne seconding. Gale Wilkinson, Austin Walne, and Ray Kallmeyer voted to approve. Heidi Braun[3] and Malcolm Bourne voted to abstain." *Id.* at 4. Following the resolution, Enklu filed its Chapter 7 petition on June 1, 2026. (Chapter 7 Voluntary Petition, Dkt. 1).

WIGF filed its Motion to Dismiss for lack of corporate authority to file a Chater 7 petition on June 16, 2026. (Mot. to Dismiss, Dkt. 9). In the Motion to Dismiss, WIGF states that the resolution to file bankruptcy was without the approval of the Requisite Holders or the Preferred Stockholders and Malcolm Bourne in his capacity as the Series A-1 Preferred Director. *Id.* at ¶ 20. It argues that the Amended Charter expressly requires "the written consent or affirmative vote of the Requisite Holders . . . to 'liquidate, dissolve or wind-up the business and affairs of the Corporation.'" (Mot. to Dismiss, Dkt. 9 at p. 9 (citing the Amended Charter, Art. Fourth, §§ 2.5.1, 3.3, and 3.3.1 at pp. 6–9) Because "the written consent or affirmative vote of the Requisite Holders was [not] sought or obtained," and because "WIGF did not provide written consent or an affirmative vote in favor of the purported action to liquidate," WIGF argues that "there is no authorization for the Chapter 7 filing." *Id.* at p. 11. Essentially, any actions in the Protective Provisions require the approval of the Requisite Holders, which includes a majority of the shareholders *and* WIGF. (Amended Charter, Dkt. 9, Ex. 1, Art. Fourth, § 2.5.1 at p. 6).

[3] In a footnote in its Motion to Dismiss, WIGF states, "The Board Minutes identify Heidi Braun as present and count her toward the quorum. Movants are not aware of her appointment to the board." (Mot. to Dismiss, Dkt. 9 at ¶ 19).

WIGF explains in its Motion to Dismiss that the Requisite Holder and Requisite Director provisions serve different purposes. According to WIGF, the Requisite Holder provisions function at the shareholder level and govern certain corporate actions, including liquidation decisions. The Requisite Director provisions operate at the Board level and incorporate the participation of the Series A-1 Preferred Director in the governance structure. According to WIGF, the existence of one approval mechanism does not eliminate the other. (Mot. to Dismiss, Dkt. 9 at pp. 12–13). The court accepts WIGF's position on these issues. The problem for the Debtor is that neither the Requisite Holders nor the Requisite Director voted in favor of filing a bankruptcy petition at the May 29, 2026 Board meeting. The court finds, however, that the approval of the Requisite Holders nor the Requisite Director was required to file a petition.

In his response to WIGF's Motion to Dismiss, the Chapter 7 Trustee argues that "nothing in Section 3.3 of the Amended Charter . . . applies to the initiation of insolvency proceedings or a bankruptcy filing." (Resp. in Opp'n., Dkt 22 at p. 5). Because there is no reference to a bankruptcy filing, this court must refer to Delaware's default rule, which states, "the business and affairs of every corporation . . . shall be managed by or under the direction of a board of directors, except as may be otherwise provided in [the DGCL] or in its certificate of incorporation." *Id.* (citing 8 Del. C. § 141(a)). The Trustee further argues that "in the absence of specific provisions in a corporation's governing documents regarding authority to file a bankruptcy petition, the default rule that such a decision is left to the corporation's board of directors alone applies." *Id.* at 6.[4] Without "specific authorization, the authority rests, by default, with the corporation's board of directors." *Id.* at 7-8.

## DISCUSSION

### I. Authority to File a Chapter 7 Petition

[4]The Trustee cites *In re Murie Graphic Design Inc.*, 667 B.R. 54, 56 (Bankr. D. Idaho 2025), *Matter of Giggles Rest., Inc.*, 103 B.R. 549, 552–53 (Bankr. D.N.J. 1989), *In re Arkco Props., Inc.*, 207 B.R. 624, 628 (Bankr. D. Ark. 1997), and *In re Moni–Stat, Inc.*, 84 B.R. 756, 757 (Bankr. D. Kan. 1988) to support this proposition.

This court must determine whether Enklu's petition was filed by those who had authority to do so as "the initiation of [bankruptcy] proceedings, like the run of corporate activities, is left to the corporation itself, i.e. to those who have the power of management." *Price v. Gurney*, 324 U.S. 100, 104 (1945). If this court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Id.* Because Enklu is incorporated in Delaware, the authority to file a Chapter 7 petition is governed by Delaware law. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987) (finding that corporations are governed by the corporate law of their state of incorporation); *see also Price*, 324 U.S. at 106 ("In absence of federal incorporation, th[e] authority [to file a bankruptcy petition] finds its source in local law."). As a Delaware corporation, Enklu is governed by the General Corporation Law of the State of Delaware (the "DGCL").

Under the DGCL, "[t]he business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation." 8 Del. C. § 141(a). The Delaware Supreme Court interpreted Section 141 and said, "Section 141(a) requires that any limitation on the board's authority be set out in the certificate of incorporation." *Quickturn Design Sys., Inc. v. Shapiro*, 721 A.2d 1281, 1291 (Del. 1998). Further, Section 102 of the DGCL states, "the certificate of incorporation may also contain ... any provision ... limiting ... the powers of ... the directors." 8 Del. C. § 102(b)(1). Interpreting this section, the Delaware Supreme Court said, "Section 102(b)(1) contemplates that any provision that limits the broad statutory power of the directors must be contained in the certificate of incorporation." *AFSCME Emps. Pension Plan*, 953 A.2d at 234. Therefore, if WIGF sought to limit the ability of Enklu to file bankruptcy, it would have to include a specific provision in the Amended Charter.

## II. The Applicable Language of the Delaware Code is Clear.

The Amended Charter plainly states that Enklu requires the consent of the Requisite Holders to "liquidate, dissolve or wind-up the business and affairs of the Corporation or effect any Deemed Liquidation Event." (Amended Charter, Dkt. 9, Ex. 1 Art. Fourth, § 3.3.1 at p. 9). Delaware law informs that "the terms liquidation, dissolution and winding-up refer to corporate transactions which are essentially statutory in nature and typically have a precise statutory meaning under the applicable corporation law of a particular jurisdiction." *Prescott, Ball & Turben, et al. v. LTV Corp.*, 531 F. Supp. 213, 219 (S.D.N.Y. 1981) (citing N.Y.B.C.L. Articles 5 (Liquidation), 10–11 (Dissolution). Del.Code Ann. tit. 8, ss 271-284 (Winding Up and Dissolution), 291-303 (Liquidation)).

Under Delaware law, these terms are outlined under Title 8 of the DGCL. Sections 271 through 285 deal with sales of assets, dissolution, and liquidation while Sections 291 through 303 deal with insolvency, receivers, and trustees. Further, Section 303 specifically details the actions a corporation in federal bankruptcy may take without obtaining approval from its directors or shareholders. 8 Del. C. § 303. Considering that each matter has its own requirements, rules, and procedures as explained in the DGCL, the Trustee legitimately argues, "under Delaware law, bankruptcy is a concept separate from liquidation, dissolution, and the other processes referred to in Section 3.3.1 [of the Amended Charter] and in the definition of Deemed Liquidation Event." (Resp. in Opp'n, Dkt. 22 at 9).

The court agrees with the Trustee. Courts are required to read the plain language of a statute and may not read language into the statute that is not there. *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 215 (2020); *In re Rody*, 468 B.R. 384, 388 (Bankr. D. Ariz. 2012) ("Courts must apply the plain meaning of the statute and may not read into a statute an exemption that is not there."). Where the

statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485 (1917). *See also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989) ("[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.").

Reading the plain language of the statute, it is clear that liquidation, dissolution, winding-up, and bankruptcy are not synonymous as the Delaware legislature dealt with each of them separately. *Dedicated Nursing Assocs., Inc. v. Buckeye Forest At Akron LLC*, No. 2:25-CV-236, 2026 WL 575073, at *5 (S.D. Ohio Mar. 2, 2026) ("A Chapter 7 bankruptcy is not . . . the same as a dissolution. The former involves the administration and liquidation of an entity's assets, whereas dissolution results in the termination of an entity's existence.") (citation omitted). Indeed, if the court were to read these terms as synonymous, it would render each redundant, and courts should "avoid a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 562 (1995). If the Delaware legislature wanted liquidation, dissolution, winding-up, and bankruptcy to be synonymous, it would not have divided each event into its own category in the statute with separate rules, procedures, and requirements.

## III. Enklu Had Authority to File Its Chapter 7 Petition.

The Amended Charter does not include filing for bankruptcy as an event that requires approval of the Requisite Shareholders or Malcom Bourne as the Series A-1 Preferred Director. Simply put "the list of actions requiring consent is clear, specific and limited. The filing of a bankruptcy petition is not equivalent to liquidation or dissolution." *In re E. End Dev., LLC,* 491 B.R. 633, 640 (Bankr. E.D.N.Y. 2013); *and see In re SSRE Holdings, LLC*, No. 2:21-BK-10327-WB, 2021 WL 3829303, at *5 (B.A.P. 9th Cir. Aug. 26, 2021) (holding that corporation had authority to file bankruptcy because "the Operating Agreement does not specifically require the consent of all

members to file bankruptcy"). Put another way, "[t]he authority to file a petition was not specifically included and may not be derived by implication from any of the specifically authorized acts. There is a difference between winding up and dissolving the corporation and filing a bankruptcy petition on its behalf." *In re Stavola/Manson Elec. Co., Inc.*, 94 B.R. 21, 23 (Bankr. D. Conn. 1988). The court finds that liquidation, insolvency, winding up dissolution, and bankruptcy are not synonymous, "and the Court will not equate . . . [them] for the purposes of including bankruptcy as an event requiring the consent of [the Requisite Holders]." *E. End Dev., LLC,* 491 B.R. at 640.

Finally, WIGF argues that under *Price v. Gurney* that the question "is not whether the Amended Charter expressly references bankruptcy, but whether Delaware law and Enklu's governing documents allocated authority over the corporate action the Board approved." (Reply in Support, Dkt. 27 at 3). While that is the correct inquiry, the court cannot ignore that the Amended Charter simply does not say that filing bankruptcy is an action requiring consent. Just as this court will not "read into statutes words that aren't there," neither will it read into the Amended Charter words that are not there. *Romag Fasteners, Inc*, 590 U.S. at 215. This court does not have the "power to amend the language of the Operating Agreement, which provides a comprehensive recitation of the parties' rights and responsibilities. To do so would arbitrarily limit the full rights granted to the managing member and would be inconsistent with the express terms of the Operating Agreement." *In re E. End Dev.*, 491 B.R. at 636.[5]

Further, the Amended Charter is unambiguous in defining which actions require the permission of the Requisite Holders or the Series A-1 Preferred Director. "If a contract is

[5] WIGF attempted to distinguish *East End Development*, arguing, "*East End* itself recognizes the distinction WIGF advances here: filing bankruptcy and liquidating are not synonymous concepts, but a bankruptcy proceeding may nevertheless be the process through which liquidation is accomplished." (Supp. Mem. Regarding *In Re East End Development, LLC*, Dkt. 36 at p. 6). As already stated, the court will not equate liquidation and bankruptcy. The words are legal terms of art, and requiring permission to file a bankruptcy petition needed to be expressly written in the Amended Charter.

unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). Under Delaware law, the "parol evidence rule bars the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract." *Galantino v. Baffone*, 46 A.3d 1076, 1081 (Del. 2012). If WIGF wanted the filing of a bankruptcy petition to be among the actions requiring permission of the Requisite Holders or the Series A-1 Preferred Director, it should have included that in the Amended Charter. It did not, and since "[t]his is the contract that the parties wrote, . . . [WIGF] must live with the consequences." *Lanich v. Bragg*, No. 05-CV-269-D, 2006 WL 8435531, at *5 (D. Wyo. June 22, 2006).

## CONCLUSION

For the reasons stated above, WIGF's Motion to Dismiss is denied. Enklu had the authority to file its Chapter 7 petition and may proceed with its bankruptcy case. This opinion represents the court's findings of fact and conclusions of law. A separate order will be entered.

**Date: October 14, 2026**

**ENTERED:**

Jacqueline P. Cox

**Jacqueline P. Cox**
**Chief Bankruptcy Judge**